### STATE *v.* NEWTON A. SIMPSON.

An indictment under the act of 1868, Bat. Rev., chap. 32, sec. 95, for killing and abusing a cattle beast, the property of, &c. in an inclosure not surrounded by a lawful fence, is defective, for the reason that it does not charge the act to have been done "unlawfully and wilfully," or words of equivalent meaning.

(*State* v. *Stanton*, 1 Ired. 424, cited and approved.)

INDICTMENT for abusing and killing stock in an enclosure not surrounded by a lawful fence, tried before *Eure, J.,* at Spring Term, 1875, of the Superior Court of CHOWAN County.

The prisoner was arraigned and tried upon the following bill of indictment, to wit:

"STATE OF NORTH CAROLINA, ⎱ *Superior Court,*
      CHOWAN COUNTY.          ⎰ Fall Term, 1874.

The jurors for the State, upon their oath, present that N. A. Simpson, late of the county of Chowan, aforesaid, on the first day of January, in the year of our Lord one thousand eight hundred and seventy-four, with force and arms, at and in the county of Chowan aforesaid, one cattle beast, to wit, the property of John Roberts, of the value of ten dollars, did abuse and kill in the enclosure of the said N. A. Simpson, not surrounded by a lawful fence, against the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The jury returned a verdict of guilty, and thereupon the defendant moved in arrest of judgment on the ground that the indictment did not charge that the abusing and killing was "unlawful and wilfull," as required by Sec. 95, Chap. 32, Bat. Rev.

The Court overruled the motion, and the prisoner appealed.

No counsel in this Court for the prisoner.

*Attorney-General Hargrove* and *Gilliam & Pruden*, for the State.

PEARSON, C. J. The defendant was convicted under the Act of 1868. "If any person shall kill or abuse any horse, cow, hog, &c., the property of another, in any enclosure not surrounded by a lawful fence, such person shall be deemed guilty of a misdemeanor." Bat. Rev., chap. 32, sec. 95.

It is apparent from the nature of things that these words are too broad and go beyond the meaning of the law makers. The statute by its necessary construction must be qualified by the addition of the words, "*wilfully* and *unlawfully*" kill or abuse any horse, cow, &c. Common sense forbids the idea that it was the intention of the General Assembly to send to jail every person who by *accident* kills, &c., or injure the horse, cow, &c., of another in any enclosure not surrounded by a lawful fence; or every person who kills his neighbor's cow by his permission; for instance, suppose a man complains to his neighbor, "you have a mischievous cow that no fence can turn, for she will push down or jump any fence; your cow is doing me every night more damage than she is worth." And his neighbor says, "I know she is mischievous and you have leave to kill her the next time she breaks into your field, *provided* you will pay for her, or butcher her, and bring me the meat and hide and tallow." Such instances of good neighborship are not of rare occurrence where but few keep lawful fences. Can any one suppose it was the intention of the General Assembly to make such acts indictable? Yet they come

within *the words* of the statute, which shows the necessity of adding the words " unlawfully and wilfully " in order to take such cases out of the operation of the statute.   That these or equivalent words were omitted by inadvertence on the part of the draftsman and must be added by construction in order to express the meaning of the act, can be seen by adverting to the 94th section of the same chapter, making it a misdemeanor to kill or injure live stock running in the range or in the field or pasture of the owner, where the words, " unlawfully or on purpose " are used to describe the offence, and to the 96th section of the same chapter, making it *larceny* to kill any horse, cow, &c., in the counties of Marion, Jackson and other specified mountain counties, in which the protection of stock is a matter of great importance by reason of the extensive range lying in these counties.

In this act, in order to describe the offence and show the meaning of the Legislature, the words " maliciously or wilfully and wantonly " are used to qualify the word " kill."

We declare our opinion to be that the indictment is defective, because it does not allege that the act was done " unlawfully and wilfully," which are the words used in the precedents, and for the sake of conformity ought to be followed in statutes as well as in indictments, although other equivalent words answer the same purpose, as " unlawfully and on purpose," used in the 94th section, or " maliciously or wilfully and wantonly," used in the 96th section.   *State* v. *Stanton* and *State* v. *Allen*, have no bearing except as precedents where " unlawfully and wilfully " are used.

It was said on the argument, " The Solicitor is not supposed to be wiser than the members of the General Assembly.   It is not his province to supply words necessary to express the meaning of a statute, and it is sufficient if the indictment follows the very words used by the law makers."

That proposition is true, as a general rule; but there are some exceptions to it, and the case before us is one.   The Solicitor is not supposed to be wiser than the members of the

General Assembly, but he is supposed to be a lawyer, to whom the duty of drawing bills of indictment is entrusted, and it is his province to set out in the bill of indictment every allegation necessary to describe the offence, so as to bring it within the meaning of the statute, and enable the Court to see from the face of the indictment that if the matters set out are true, the defendant is guilty of an indictable offence. This indictment does not exclude the idea of a killing by accident or by license of the owner, and the Court cannot *know*, taking all of the allegations to be true, that the defendant has committed an indictable offence.

In *State* v. *Stanton*, 1 Ired., 424, it is said, "As it is certain that the indictment was intended to describe the offence which the statute describes, it follows, from the use of the very same language in both, that the one means what the other does, neither more nor less. It is true that some few exceptions from this rule have been established by adjudication; but they have not appeared to us to embrace the present case. Thus a statute may be so inaccurately penned that its language does not express the whole meaning the Legislature had, and by construction its sense is extended beyond its words. In such a case the indictment must contain such averments of other facts, not expressly mentioned in the statute, as will bring the case within the true meaning of the statute: that is, the indictment must contain such words as ought to have been used in the statute, if the Legislature had correctly expressed therein their precise meaning. In our case the indictment does not contain such words as ought to have been used in the statute, "if the Legislature had correctly expressed therein their precise meaning;" and it was necessary for the indictment to aid the want of accuracy by adding the words necessary to express the meaning of the statute, and to qualify the general words used.

Error.

Per Curiam.                                   Judgment arrested.